IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| In the Matter of: | : |
| | : Chapter 13 |
| MARY DOWNING, | : |
| | : Case No. 09-81667-cra |
| Debtor. | : |
| | : |

## NATIONAL CAPITAL MANAGEMENT, LLC'S RESPONSE TO THE DEBTOR'S SECOND AMENDED MOTION TO MODIFY PLAN

National Capital Management, LLC ("NCM"), as successor-in-interest to Santander Consumer USA, Inc., as successor in interest to HSBC Auto Finance Inc., which includes its affiliate, Beneficial Mortgage Company of North Carolina ("HSBC"), hereby opposes the Debtor's Motion to Modify Plan Post Confirmation. In support of its opposition, NCM respectfully states as follows:

1. The Debtor filed a petition under Title 11 of the United States Bankruptcy Code, Chapter 13 on July 15, 2009, in the United States Bankruptcy Court for the Middle District of North Carolina.

2. This Court has proper and personal jurisdiction of the subject matter hereof and over the parties pursuant to 28 U.S.C. §§151, 157, and 1334.

3. On May 10, 2006, the Debtor borrowed money from HSBC, and in exchange executed and delivered to HSBC a Loan Repayment and Security Agreement in the original principal amount of $14,663.80. At the same time, the Debtor granted HSBC a security interest in a 2005 Toyota Corolla, vehicle identification number 1NXBR32E45Z551035, with such lien information being thereafter noted on the North Carolina Certificate of Title. Attached hereto as "Exhibit A" are copies of the promissory note and the Certificate of Title.

4. On August 5, 2009, HSBC timely filed its secured proof of claim in the amount of $7,668.62. All of the supporting documents evidencing the debt and security interest in the Corolla were attached to the proof of claim.

5. On October 8, 2009, this Court entered an order confirming the Debtor's Chapter 13 plan. Regarding the Toyota Corolla, that confirmed plan modified, or crammed down, the Corolla claim to $5,940.00 at a *Till* rate of 5.25%. The Trustee continues to make payments on that claim accordingly.

6. On December 15, 2010, HSBC assigned to Santander Consumer USA all of its right, title and interest in HSBC's claim by filing transfer documents with the Court pursuant to Fed. R. Bankr. P. 3001(e)(2).

7. On May 14, 2011, Santander assigned to NCM all of its right, title and interest in Santander's claim by filing transfer documents with the Court pursuant to Fed. R. Bankr. P. 3001(e)(2).

8. On September 30, 2011, the Debtor filed her Second Amended Motion to Modify Plan.

9. With its crisscrossing provisions and internal contradictions, it is not at all clear from the Debtor's papers how she intends to provide for NCM's secured claim in this most recent proposed modification. On one hand, the Debtor proposes to surrender some undefined, unspecified, nugatory "interest" in the Toyota, but on the other hand speaks of surrendering the "property" itself. In addition, the Corolla was purportedly destroyed in an automobile accident and is a "total loss."

10. NCM very respectfully submits that if the Debtor proposes to modify the secured claim now held by NCM, something that NCM concedes that she is able to do, provided such

modification comports with the requirements of §1329(a), that such proposed modification be clearly written in a way that all of the parties – the Court, the Trustee, NCM, and the Debtor – understand how the Debtor is planning to restructure the claim. Because NCM would be bound by the prospective operation of a confirmed Chapter 13 plan, the Debtor has an obligation to propose a plan that is not vague, conflicting, confusing, or lacks clarity.

WHEREFORE, NCM hereby moves that this Court enter an order denying the Debtor's Second Amended Motion to Modify Plan, and that the Chapter 13 Trustee to continue to pay NCM's secured claim accordingly and as it presently stands.

This the 10th day of October, 2011.

Respectfully submitted,

/s/ Paige C. Kurtz
Paige C. Kurtz (NC Bar No. 26549)
Attorney for National Capital Management, LLC
3109 Poplarwood Court, Suite 115
Raleigh, NC 27604
Telephone: (919) 954-1900
Email: pkurtz@sprousekurtzlaw.com




**Repayment Agreement Instructions**
1. Read the entire Agreement.
2. Sign at the bottom of this page.

## Loan Repayment And Security Agreement

Borrower(s): **MARY W DOWNING**

Creditor: **BENEFICIAL MORTGAGE COMPANY OF NORTH CAROLINA**
4711 HOPE VALLEY ROAD
STE 5C
DURHAM, NC 277075651

Vision App #: _____
AIB App #: _____
Date of this Loan: 05/10/2006
Principal Loan Amount: $ 14,663.80
Maturity Date: 05/09/2011
Contract Rate: 10.19

In this Agreement, "we","us", and "our" refer to the Creditor, BENEFICIAL MORTGAGE COMPANY OF NORTH CAROLINA, and its successors and assigns; "you" and "your" refer to each Borrower who signs this Loan Repayment and Security Agreement (the "Agreement") and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan. The "Loan" is the extension of credit governed by this Agreement.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit at a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 10.19 % | $ 4,112.60 "e" | $ 14,663.80 | $ 18,776.40 "e" |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 60 | $ 312.94 | Monthly, beginning: 06/09/2006 |

**Security:** You are giving a security interest in the Vehicle described below and all Collateral as defined in this Agreement.
**Late Charge:** If any payment is not paid in full within 15 days after it is due, you agree to pay a late charge equal to 4% of the unpaid amount of the payment.
**Prepayment:** If you pay off this note early, you will not have to pay a penalty.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.
"e" means an estimate.

Returned Check Charge: $25

**Security:** This Loan is secured by a __05__ __TOYOTA__ __COROLLA__ with a Vehicle Identification Number __1NXBR32E45Z551035__ (the "Vehicle").

**Itemization of the Amount Financed:**
Amount Paid Directly to You: N/A
Amount Paid to Others on Your Behalf:

| WFS FINANCIAL | 14,618.80 |
| NC TITLE FEES | 15.00 |
| REMOVE NAME FEE | 30.00 |
| N/A | N/A |
| N/A | N/A |

By signing below, you agree to all terms and conditions as set forth on page one, page two, page three, and page four of this Agreement and you acknowledge receiving a completed copy of this Agreement, our Privacy Statement and the Truth in Lending disclosures.

Borrowers:
_Mary W. Downing_  5/10/06
Signature            Date

_____  _____
Signature            Date

NCACON

Rev. 02/21/2005

**REPAYMENT OF THIS LOAN.** In return for this Loan, you promise to pay us the Principal Loan Amount stated on page one of this Agreement plus interest from the Date of this Loan at the Contract Rate stated on page one of this Agreement, in monthly payments as stated on page one of this Agreement. You may prepay all or any part of this Loan at any time without penalty. If you pay more than your monthly payment, you are still required to pay each subsequent payment in the original amount as it becomes due until this Loan is paid in full. You will pay at our address stated on page one or at any other address we provide to you for making payments. If more than one Borrower is listed on page one, the obligation to pay this Loan is joint and several and we may enforce this Agreement against all or any of the Borrowers.

**DATE OF THIS LOAN.** The terms and disclosures contained in this Agreement are based on the Date of this Loan stated on page one. Interest will not begin to accrue, however, until the date that we disburse the loan proceeds. At the time that we disburse the loan proceeds, the Date of this Loan, payment due dates, and maturity date will be adjusted to reflect the actual date that proceeds are disbursed. We will notify you of the disbursement date and the adjusted terms.

**PRINCIPAL LOAN AMOUNT.** If this Loan involves a refinance of a prior loan you have with another lender (the "Lienholder") secured by the Vehicle identified on page one, the Amount Financed and the Principal Loan Amount stated on page one are based on loan pay-off information that we have received from the Lienholder, and you authorize us to disburse proceeds directly to the Lienholder. If the disbursement exceeds the actual pay-off amount, the Lienholder will be solely responsible for remitting any surplus to you. If the disbursement is not sufficient to satisfy all amounts owed to the Lienholder, or if it becomes necessary for us to disburse additional amounts in order to perfect our security interest on the Vehicle in a first lien position (whether for taxes, title fees, or similar charges), we may, at our option, disburse such additional funds needed and add such additional amounts to the amount of this Loan, which will increase your payment obligation, and we will notify you of any such additional amount. If this Loan involves the purchase of a vehicle which will be secured by this Loan, the Amount Financed and the Principal Loan Amount stated on page one may be based on a maximum authorized loan amount. If the actual disbursement is less than the amounts stated on page one, we will notify you of the actual disbursement amount and the adjusted terms.

**INTEREST ACCRUAL.** Interest (including Finance Charges) will be computed by the simple interest method at the Contract Rate on actual unpaid balances of principal for the time actually outstanding. After maturity of this Loan, interest will accrue at the lesser of the Contract Rate or the maximum legal rate of interest on the unpaid balance of this Loan.

**PAYMENTS.** Payments you make on this Loan will be applied to your account in any manner that we choose that is permitted by law. We may, but are not required to, extend or defer your obligation to make payments, with or without your consent, and interest will accrue on unpaid balances of principal during any such extension or deferral. The amount of your final payment will depend on the amounts and dates of the payments you make.

**OTHER CHARGES.** You agree to pay a Late Charge as specified in the Truth in Lending disclosures on page one. If a Returned Check Charge is specified on page one, you agree to pay such Returned Check Charge if any payment check is returned because of insufficient funds or no account. You agree to pay our charges for any check debits or checkfaxes you authorize us to make. The interest rate and all other charges on this Loan will never exceed the highest rate or charge permitted by law for this loan.

**SECURITY INTEREST.** You grant us a security interest in the Collateral, which consists of: (a) the Vehicle described on page one; (b) any accessories, equipment, and replacement parts installed in the Vehicle within ten days of the date of this Agreement; (c) any insurance premiums or charges for debt cancellation or gap waiver coverages, service contracts, warranties, or similar arrangements, which are returned to us; (d) the proceeds of any insurance policies, debt cancellation or gap waiver coverages, service contracts on the Vehicle, or similar arrangements; and (e) the proceeds of any insurance policies on your life or health that are financed as part of the Principal. This security interest secures payment of all amounts owed under this Agreement, your other obligations in this Agreement, and in any transfer, renewal, extension, modification, or assignment of this Agreement.

**YOUR WARRANTIES AND OBLIGATIONS.** You represent and warrant that you own the Vehicle free and clear of any liens except for our lien. You agree: (a) to keep the Vehicle in good repair, free from all other liens and security interests; (b) not to sell, rent, lease, or transfer all or any part of the Vehicle without our prior written consent; (c) not to destroy the Vehicle or use it unlawfully or for hire; (d) not to remove the Vehicle from the United States, nor to remove it permanently from the state of your residence; (e) to make sure that our security interest on the Vehicle is shown in a first lien position on the title and/or other evidence of ownership; (f) to reimburse us for any charges we pay for repair, storage, taxes, fines, or similar charges related to the Vehicle, plus interest thereon at the Contract Rate; (g) to immediately notify us of any change in your address; (h) to fully cooperate with us in adjusting for any clerical errors on any documents relating to this Loan; (i) to execute any and all additional documents which we may need in order to comply with any and all laws, rules, regulations, or applicable policies and procedures; (j) to pay all taxes, fees, and charges relating to the Vehicle as they become due; (k) to permit us to inspect the Vehicle upon reasonable notice; and (l) to promptly inform us of any loss or damage to the Vehicle.

**Additional Terms continued on Page Three following this sheet.**

**PHYSICAL DAMAGE INSURANCE.** You agree to maintain comprehensive physical damage insurance (or fire, theft, and combined additional coverage) covering all loss or damage to the Vehicle described on page one, with a maximum deductible amount of $500, and naming the Creditor as Loss Payee, effective from the date of this Agreement until all debts secured by this Agreement are paid in full. You may voluntarily choose the insurance agent or broker through whom the insurance is obtained. You agree to purchase the insurance from a firm authorized to do business in your state of residence and which is reasonably acceptable to us. You agree that all proceeds may be paid directly to us, and you authorize us to endorse your name as payee on any proceeds checks. If at any time you do not maintain physical damage insurance as required, then we may buy insurance at your expense which, at our option, will cover either only our interest in the Vehicle or both your and our interests in the Vehicle, but we are under no obligation to buy any such insurance. We are under no obligation to obtain such insurance at the lowest or best rate, and any insurance we buy may be more costly than insurance you buy. If we buy any such insurance, we will inform you of the applicable charges. If you do not pay such charges in addition to monthly payments as provided in this Agreement, we may add such charges to the Principal balance then outstanding and interest will accrue on such additional amounts at the Contract Rate. If there is any loss or damage to the Vehicle, you agree that we can use any insurance proceeds either, at our option, to repair the Vehicle or to reduce the balance of this loan.

**LIABILITY INSURANCE.** No public liability insurance is included, issued, or financed by this Loan.

**DEFAULT.** You are in default: (a) upon failure to pay any installment when due; (b) upon failure to comply with any provision of this Agreement; (c) if the Vehicle is lost, stolen, substantially damaged, destroyed, sold, encumbered, removed, concealed, attached, levied upon, confiscated, or subject to forfeiture under law; (d) upon the initiation of any proceeding in bankruptcy, receivership, or insolvency involving you or the Vehicle; (e) any statement or warranty you made in connection with this Loan is untrue or inaccurate at the time when made; or (f) you or any guarantor dies, becomes incompetent, or ceases to exist. Our waiver of any default or our acceptance of any late payment does not constitute a waiver as to any other default.

**REMEDIES UPON DEFAULT.** Upon default, we may, at our option and without notice except as may be required by applicable law, accelerate this Loan and declare the entire unpaid amount of this Loan immediately due and payable, and exercise all or any of our rights of enforcement, including without limitation the right to peaceably repossess the Vehicle. We may also recover from you any reasonable and lawful expenses related to enforcement of our rights, including attorney's fees if not prohibited by applicable law, court costs, and any fees incurred in repossessing or selling the Vehicle. You may be subject to suit and liability, if not prohibited by applicable law, if any amount obtained upon sale or disposition of the Vehicle is insufficient to pay the balance of the Loan and any other amounts due under this Agreement. You will pay simple interest at the lesser of the Contract Rate or the maximum legal rate of interest on the unpaid balance of any judgment in our favor. Notice mailed to your address as shown on the first page of this Agreement shall constitute reasonable notice if mailed within ten (10) days, or such other number of days required under applicable law, before the date of public sale of the Vehicle; or within seven (7) days, or such other number of days required under applicable law, before the date after which a private sale will take place.

**EXCHANGE OF INFORMATION.** You understand that from time to time we may receive credit information concerning you from others, such as credit reporting agencies. If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a credit reporting agency. You agree that the Department of Motor Vehicles (or similar state agency) may release your residence address to us. You agree that our supervisory personnel may monitor or record telephone calls between you and our representatives in order to evaluate the quality of our service to you. If you serve in the U.S. Armed Forces, you agree that we may communicate with your superior officer(s) regarding your Loan, including without limitation, the collection and timely payment of your Loan.

**APPLICABLE LAW.** This Loan and this Agreement are governed by the laws of the state of North Carolina.

**MISCELLANEOUS PROVISIONS.** You agree that this Agreement and any amendments thereto may be executed by facsimile, and that a facsimile copy we receive from you will be considered an original of this Agreement or any amendment. Any change or modification to this Agreement must be in writing. Without impairing the obligation of any Borrower to pay this Loan, we may release any of the other Borrowers; fail to perfect, impair, or release our security interest in the Vehicle; or extend new credit, renew, modify, extend the term of, or change this Loan. The fact that any part of this Agreement cannot be enforced will not affect any other provisions of this Agreement. You may not assign your obligations under this Agreement. This Agreement is the entire agreement between the Borrower and us.

Additional Terms continued on Page Four following this sheet.

Vision App # _____

AIB App # _____

**ADDITIONAL TERMS OF THE AGREEMENT**
**THIS AGREEMENT CONSISTS OF FOUR PAGES: THIS IS PAGE 4 OF 4**

Arbitration, you agree that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution, statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, and third party claims, arising from or relating to your Loan Repayment and Security Agreement ("Agreement") or the relationships which result from this Agreement, including the validity or enforceability of this arbitration paragraph, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election by you or us, of binding arbitration pursuant to this arbitration paragraph and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. Whoever initiates the arbitration proceeding shall have the right to select one of the following arbitration administrators: the National Arbitration Forum ("NAF"), P.O. Box 50191, Minneapolis, MN 55405 (www.arbitration-forum.org) (800) 474-2371, or JAMS, 555 13th NW, Suite 400 West, Washington, DC 20004 (www.jamsadr.com) (800) 352-5267. The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. The arbitrator shall be independent of and unrelated to you or us. We agree not to invoke our right to arbitrate an individual claim you may bring in Small Claims Court or an equivalent court if any, so long as the claim is pending only in that court. You may contact, obtain the arbitration rules of, or file a Claim by contacting the above organizations.

Our address for the service of process under this paragraph is P.O. Box 279, Mt. Prospect, IL 60056.

Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by you and us.

If we file a Claim, we shall pay all the filing costs. If you file a Claim, the filing costs shall be paid as follows: (a) we agree to pay for the initial cost of filing the Claim up to the maximum amount $100.00; (b) for the filing costs over $100.00, such additional cost shall be divided equally between you and us up to the amount charged by the arbitration administrator for a Claim equal to your loan amount; and (c) all costs over the amount charged by the arbitration administrator for a Claim equal to your loan amount shall be paid by you. The cost of up to one full day of arbitration hearings will be shared equally between you and us. Fees for hearings that exceed one day will be paid by the requesting party. We and you will each bear the expense of our respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor, you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible.

This paragraph is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16 (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA, including laws concerning reception, rejection and consideration of evidence, and shall provide written reasoned findings of fact and conclusions of law. The arbitrator's award shall not be subject to appeal except as permitted by the FAA. We and you agree that the award shall be kept confidential. Judgment upon the award may be entered in any court having jurisdiction. All statutes of limitations that would otherwise be applicable shall apply to any arbitration proceeding.

The arbitrator shall be empowered to impose sanctions and to take such other actions as the arbitrator deems necessary to the same extent as could be imposed by a judge pursuant to the Federal Rules of Civil Procedure.

This Arbitration paragraph shall survive repayment of your loan and/or termination of the Agreement. If any portion of this Arbitration paragraph is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Arbitration paragraph of the Agreement. In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this Arbitration paragraph, this Arbitration paragraph shall govern. No class actions or joiner or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of you and us.

You understand that arbitration significantly affects your rights in any dispute with us as follows:

- If either of us chooses, any dispute between us will be decided by arbitration and not in court.
- If a dispute is arbitrated, each of us will give up our right to a trial by a court or a jury trial.
- If a dispute is arbitrated, you will give up your right to participate as a class representative or class member in any class claim you may have against us including any right to class arbitration.
- The information we and you may obtain in discovery from each other in arbitration is generally more limited than a lawsuit.
- Other rights that each of us would have in court may not be available in arbitration.
- Even if a dispute is arbitrated, we can still repossess your vehicle if you do not honor the terms of this contract and either of us may seek provisional remedies from a court.

No provision of, nor the exercise of any rights under this Arbitration paragraph shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purpose of realizing upon, reserving, protecting or foreclosing upon any property involved in any Claim or subject to the loan documents. The use of the courts shall not constitute a waiver of the right of any party, including the plaintiff, to submit any Claim to arbitration nor render inapplicable the compulsory arbitration provisions contained in this Arbitration paragraph.

**BY SIGNING THIS AGREEMENT YOU ACKNOWLEDGE THAT YOU HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT, BUT YOU AGREE TO RESOLVE ANY CLAIMS THROUGH BINDING ARBITRATION AND YOU WAIVE YOUR RIGHTS TO LITIGATE CLAIMS IN A COURT SHOULD EITHER WE OR YOU ELECT BINDING ARBITRATION.**

**End of Additional Terms.**

# STATE OF NORTH CAROLINA

MVR 191 (Rev 06/06)

## CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE | BODY STYLE |
|---|---|---|---|
| 1NXBR32E45Z551035 | 2005 | TOYT | 4S |

| TITLE NUMBER | TITLE ISSUE DATE | PREVIOUS TITLE NUMBER |
|---|---|---|
| 772296061878909 | 07/08/2006 | 771976052165012 |

MAIL TO:
BENEFICIAL MORTGAGE COMPANY OF NC
PO BOX 660968
SACRAMENTO CA 95866-0968

ODOMETER READING: 000004
ODOMETER STATUS:
TITLE BRANDS:

OWNER(S) NAME AND ADDRESS

MARY WYATT DOWNING
BRANDI SHEREE DOWNING

The Commissioner of Motor Vehicles of the State of North Carolina hereby certifies that an application for a certificate of title for the herein described vehicle has been filed pursuant to the General Statutes of North Carolina and based on that application, the Division of Motor Vehicles is satisfied that the applicant is the lawful owner. Official records of the Division of Motor Vehicles reflect vehicle is subject to the liens, if any, herein enumerated at the date of issuance of this certificate.

As WITNESS, his hand and seal of this Division of the day and year appearing in this certificate as the title issue date.

COMMISSIONER OF MOTOR VEHICLES

FIRST LIENHOLDER: DATE OF LIEN 06/23/2006
BENEFICIAL MORTGAGE COMPANY OF NC
PO BOX 660968
SACRAMENTO CA 95866-0968
LIEN RELEASED BY:
SIGNATURE _____
TITLE _____ DATE _____

SECOND LIENHOLDER: DATE OF LIEN
LIEN RELEASED BY:
SIGNATURE _____
TITLE _____ DATE _____

THIRD LIENHOLDER: DATE OF LIEN
LIEN RELEASED BY:
SIGNATURE _____
TITLE _____ DATE _____

FOURTH LIENHOLDER: DATE OF LIEN
LIEN RELEASED BY:
SIGNATURE _____
TITLE _____ DATE _____

ADDITIONAL LIENS:

82236635

909 T1M0B7H

ANY ALTERATIONS OR ERASURES VOID TITLE

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## A — FIRST RE-ASSIGNMENT OF TITLE BY REGISTERED OWNER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

Name of Buyer: _____

Address of Buyer: _____

"I, seller(s) certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

ODOMETER READING (No tenths)

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING — ODOMETER DISCREPANCY

To my knowledge the vehicle described herein:
Yes ☐ No ☐ Has been involved in a collision or other occurrence to the extent that the cost to repair exceeds 25% of fair market value.
Yes ☐ No ☐ Has been a flood vehicle.
Yes ☐ No ☐ Has been a reconstructed or a salvage vehicle.

Date vehicle delivered to purchaser _____

Seller(s) Signature _____
Seller(s) Hand Printed Name _____
Date _____ County _____ State _____
I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:
_____ seller(s)/name(s) of principal(s).
Notary Public Signature _____
Notary's Printed or Typed Name _____
My Commission expires _____ (SEAL)
Buyer(s) Signature _____
Buyer(s) Hand Printed Name _____

## B — FIRST RE-ASSIGNMENT OF TITLE BY DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

Name of Buyer: _____

Address of Buyer: _____

"I, seller(s) certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

ODOMETER READING (No tenths)

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING — ODOMETER DISCREPANCY

To my knowledge the vehicle described herein:
Yes ☐ No ☐ Has been involved in a collision or other occurrence to the extent that the cost to repair exceeds 25% of fair market value.
Yes ☐ No ☐ Has been a flood vehicle.
Yes ☐ No ☐ Has been a reconstructed or a salvage vehicle.

Date vehicle delivered to purchaser _____

Dealer(s) Name _____ Dealer # _____
Dealer(s) Signature _____
Dealer(s) Hand Printed Name _____
Date _____ County _____ State _____
I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:
_____ seller(s)/name(s) of principal(s).
Notary Public Signature _____
Notary's Printed or Typed Name _____
My Commission expires _____ (SEAL)
Buyer(s) Signature _____
Buyer(s) Hand Printed Name _____

## C — PURCHASER'S APPLICATION FOR NEW CERTIFICATE OF TITLE

The undersigned purchaser of the vehicle described on the face of this certificate, hereby makes application for a new certificate of title and certifies that said vehicle is subject to the following named liens and none other and that the information contained herein is true and accurate to my best knowledge and belief.

OWNER(S)
Owner 1 DL# _____
Full Legal name of Owner (First, Middle, Last, Suffix) or Company

Owner 2 DL# _____
Full Legal name of Owner (First, Middle, Last, Suffix) or Company

Residence Address _____
City _____ State _____ Zip Code _____ Tax County _____
Mail Address (if different from above) _____

**FIRST LIEN**
Date of Lien _____ Account # _____ Lienholder ID _____
Lienholder Name _____
Address _____
City _____ State _____ Zip Code _____

**SECOND LIEN**
Date of Lien _____ Account # _____ Lienholder ID _____
Lienholder Name _____
Address _____
City _____ State _____ Zip Code _____

I certify for the motor vehicle described herein that I have financial responsibility as required by law.
Insurance Company Authorized in NC _____
Policy Number _____
ODOMETER READING
Signature of Owner(s) _____
Date _____ County _____ State _____
I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _____ owner(s)/(name(s) of principal(s).
Notary Public Signature _____
Notary's Printed or Typed Name _____
My Commission expires _____ (SEAL)

**NOTE: RETAIL PURCHASER MUST APPLY FOR NEW TITLE WITHIN 28 DAYS AFTER PURCHASE OR PAY STATUTORY PENALTY. ALTERATIONS OR ERASURES WILL VOID THIS TITLE.**

# CERTIFICATE OF SERVICE

   I hereby certify that on October 10, 2011, I electronically filed the foregoing **Response to the Debtor's Second Amended Motion to Modify Plan** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Edward C. Bolts
Law Offices of John T. Orcutt, P.C.
Debtor's Attorney

Richard M. Hutson, III
Chapter 13 Trustee

Michael West
Bankruptcy Administrator


   And served a copy of the **Response to the Debtor's Second Amended Motion to Modify Plan** by depositing the same, enclosed in a postpaid wrapper, properly addressed to the following parties in interest, at their last known addresses as shown below, in a post office or official depository under the exclusive care and custody of the United States Postal Service:

Mary Downing
1203 Moreland Ave
Durham, NC 27707


   THIS the 10th day of October, 2011.


             /s/ Paige C. Kurtz
             Paige C. Kurtz (NC Bar No. 26549)
             Attorney for National Capital Management, LLC
             3109 Poplarwood Court, Suite 115
             Raleigh, NC 27604
             Telephone: (919) 954-1900
             Email: pkurtz@sprousekurtzlaw.com